IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY TRADER,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>    Defendant. | Civil No. 2:10-cv-01229-BSJ<br><br>**MEMORANDUM DECISION AND**<br>**ORDER ON ADMINISTRATIVE APPEAL**<br><br>Honorable Bruce S. Jenkins<br><br>**FILED**<br>CLERK, U.S. DISTRICT COURT<br>August 3, 2011 (1:58pm)<br>DISTRICT OF UTAH |

      Timothy Trader appeals the Commissioner of Social Security's decision denying his claim for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C.§§ 401-433.[1] The matter came before this Court for oral argument on June 29, 2011. Natalie Bolli-Jones appeared on behalf of the Plaintiff Timothy Trader; Amy Oliver and Alexess Rea appeared on behalf of the Defendant. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court REVERSES and REMANDS the Commissioner's decision for further consideration.

## LEGAL STANDARDS

      The Commissioner's decision is reviewed to "determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "such relevant

---

[1] All references to the *United States Code* (U.S.C.) are to the 2006 edition and 2010 supplement where applicable.

1

evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). This Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

**BACKGROUND**

Mr. Trader filed an application for disability insurance benefits on November 26, 2008. (Administrative Record, filed Feb. 24, 2011 (dkt. no. 8) ("AR"), at 195-201.) Mr. Trader claims that he suffers from several impairments including: adjustment disorder, cognitive disorder, chemical sensitivity, vasculitis, and dental and jaw problems. (Complaint, filed Dec. 13, 2010 (dkt. no. 3), at 2; Pl.'s Opening Brief, filed Apr. 1, 2011 (dkt. no. 15), at 4.) Mr. Trader's claim was initially denied on March 23, 2009 (AR 674-77), and denied upon reconsideration on May 28, 2009. (AR 79-81.) Mr. Trader timely requested a hearing before an Administrative Law Judge ("ALJ") on June 1, 2009. (AR 82-83.)

A hearing was held on February 2, 2010 before ALJ Robin L. Henrie. (AR 30.) On March 8, 2010, the ALJ issued a decision finding Mr. Trader not disabled. (AR 30.) The ALJ found that Mr. Trader suffered from the following severe impairments: adjustment disorder and cognitive disorder. (AR 16.) The ALJ further found that Mr. Trader's "alleged allergies, toxic encephalopathy, chemical sensitivities, asthma, and other physical conditions are not medically determinable or not severe." (AR 17.) The ALJ did not refer to any of the records describing Mr. Trader's jaw and dental impairments or limitations identified by medical sources.[2] Although the ALJ found Mr. Trader's chemical sensitivities and allergies were not medically determinable

---

[2] The ALJ references "a dentist" in the RFC assessment. However, the reference relates to credibility of the claimant's testimony and does not address the substance of the dental opinions.

or not severe impairments, the ALJ included a limitation for a clean work environment in Mr. Trader's residual functional capacity ("RFC") assessment. (AR 16.) This limitation precluded Mr. Trader from performing his past relevant work. (AR 24.) His past relevant work included work as a retail sales person at a health food store (AR 57-59) and a position at Blockbuster video rental (AR 21, 47).

A vocational expert ("VE") testified at the hearing about jobs that might be available to Mr. Trader. Due to his impairments, however, the VE opined that the job bases would be eroded between 70%-90% and possibly another 5-10%. (AR 61-62.) Furthermore, he stated he had never been able to place someone with these limitations, nor was he able to identify any employers that would be able to accommodate Mr. Trader's limitations. (AR 64-65.) Despite significant erosion in the job bases, the ALJ, in reliance on the opinion of the VE, found there were jobs Mr. Trader could perform and, therefore, Mr. Trader was not disabled. (AR 23.)

On November 12, 2010, the Appeals Council denied Mr. Trader's request for review of the ALJ's decision. (AR 1.) This denial was the final administrative decision of the Commissioner of Social Security in this case. *See* 20 C.F.R. § 404.981; *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

## DISCUSSION

**I.  Residual Functional Capacity Assessment.**

Social Security Ruling 96-8p requires that when making findings concerning the claimant's RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 (July 2, 1996). Additionally, "[t]he RFC assessment *must always* consider and *address* medical source

opinions." *Id.* (emphasis added). This assessment must be done on a function-by-function basis and include both exertional and nonexertional limitations for both severe and not severe impairments. *Id.* Finally, the RFC must include a resolution of any conflicts in the evidence. *Id.*

Mr. Trader's medical history contains numerous records concerning his jaw and dental impairments. Yet, the ALJ failed to discuss these impairments in his decision. In 1986, Mr. Trader began experiencing temporomandibular joint problems. (AR 320.) X-rays showed he had bilateral dislocated meniscus. *Id.* As a result, he underwent a tempromandibular joint arthroscopy. *Id.* While this initially helped, the clicking and pain reportedly returned. *Id.* Imaging scans in 2008 showed that Mr. Trader had narrowed joint space which increased the probability of displaced discs and thinning of tissues in his jaw. (AR 339.) Mr. Trader reported daily pain from these ailments. (AR 356.) Mr. Trader also reported limited jaw opening, lock jaw, noise, and migraine-like headaches. (AR 377.)

Also in 2008, Dr. Patrick Bondad, DDS,[3] noted that Mr. Trader suffered from constant moderate frontal headaches, and constant severe generalized and parietal headaches lasting several days. (AR 565.) Dr. Bondad diagnosed Mr. Trader with bilateral anterior disc displacement, bilateral cephalgia, abnormal jaw closure, bilateral laxity of the temporomandibular joint ligament, migraine, bilateral muscle spasm, and bilateral cervicalgia. (AR 566.) Dr. James Ott, DDS, opined that Mr. Trader's "complicated dental issues" contribute to his inability to function on a day-to-day basis. (AR 575.) At the hearing in 2010, Mr. Trader testified that due to his dental issues he has headaches almost every day. (AR 42-43.) He stated the headaches caused problems with memory and concentration. (AR 43.)

---

[3] It is not clear from the record whether Dr. Bondad is a treating source.

The ALJ is required to consider and address all medical source opinions when assessing the RFC of a claimant. In this case, the dental opinions have not been addressed. This is error. Therefore, this case must be reversed and remanded to allow Mr. Trader's RFC to be properly evaluated in light of any potential limitations resulting from his dental ailments.

## II.     Vocational Expert

Because the ALJ found that Mr. Trader cannot perform his past relevant work, the burden is on the ALJ to show there are other jobs Mr. Trader can adjust to that exist in significant numbers in the national economy. 20 C.F.R. § 1560(c); *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). This burden can be met in one of two ways: (1) by the testimony of a vocational expert, or (2) by reference to the grids.[4] *Daniels*, 154 F.3d at 1132; *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992). In this case, because Mr. Trader has nonexertional impairments, it was necessary for the ALJ to obtain testimony from a vocational expert. *Trimiar*, 966 F.2d at 1333.

As noted previously, to be upheld the ALJ's decision must be supported by substantial evidence in the record. Therefore, the VE's opinion must also be supported by substantial evidence if relied on by the ALJ in making a determination of whether jobs exist that the claimant can perform. In order for the VE's testimony to constitute substantial evidence to support the ALJ's finding, the hypothetical posed to the VE for his or her expert opinion must relate with precision to all of the claimant's impairments. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

---

[4] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels*, 154 F.3d at 1132 (quoting *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983) (internal citations omitted)).

Furthermore, several federal courts have found that if a VE is not able to give reliable or unqualified testimony regarding the availability of jobs, the ALJ may not rely on his opinion. *See Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) ( "A VE's testimony can satisfy this burden only if that testimony is reliable."); *Boone v. Barnhart*, 353 F.3d 203, 209 (3rd Cir. 2003) ("We are further troubled, however, by the hesitation with which the VE identified the three possible occupations"); *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Graves v. Sec. of Health*, 473 F.2d 807, 809-810 (6th Cir. 1973).

Here, the ALJ failed to address whether Mr. Trader has impairments resulting from his dental and jaw ailments. Therefore, the hypothetical posed to the VE did not expressly include any such impairments. Although a limitation of no sustained flexion or extension of the neck was included as well as low concentration and low memory limitations, it is unclear on what basis these were included. (AR 60.) Because the ALJ does not discuss Mr. Trader's limitations as a result of his dental ailments, we cannot assume they were part of the hypothetical posed to the VE. Therefore, it cannot be said that the hypothetical related *with precision* to Mr. Trader's impairments.

Moreover, the VE's testimony was far from unqualified. Although four "possibilities" were identified by the VE, due to Mr. Trader's stated limitations roughly 70-90% of those jobs would be unavailable to him.[5] With the additional limitations described in the second hypothetical the percentage of these possible jobs was eroded an additional 5-10%. (AR 62.)

The VE admitted that the numbers he gave in response to the hypothetical were "so close to eliminating all work." (AR 64.) When asked if he had ever placed someone in a "clean work

---

[5] The "possibilities" were: (1) house sitter, domestic service (DOT code 309.367-010); (2) office helper, clerical setting (DOT code 239.567-010); (3) addresser, office setting (DOT code 209.587-010); and (4) food and beverage order clerk (DOT code 209.567-014). (AR 61.)

6

environment" such as the one in the hypothetical, the VE stated that he had tried to help "one lady" with similar impairments, but had been unsuccessful. (AR 64-65.) The VE was unable to name a single employer or job environment that would meet the criteria laid out in the hypotheticals. *Id.* In addition, when asked if the claimant would be able to work in an environment that used air filters such as he used in his own home, the VE stated "probably not." (AR 66.)

Vague assertions concerning a theoretical possibility that jobs are available for a person with Mr. Trader's impairments are not sufficient. The ALJ's findings must be supported by substantial evidence and in this instance, such evidence is lacking. For these reasons, this case should be reversed and remanded to obtain VE testimony that can state accurately whether jobs exist in *significant* numbers in the national economy that Mr. Trader can adjust to.

## CONCLUSION

Having determined that the Commissioner's decision is not based on substantial evidence or free of error, IT IS HEREBY ORDERED pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings consistent with this order and judgment.

IT IS FURTHER ORDERED that judgment shall be entered in accordance with Fed. R. Civ. P. 58. *See Shalala v. Schaefer*, 509 U.S. 292, 296-302 (1993).

DATED this 3rd of August, 2011.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

7